**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>SIMPLISAFE, INC.,<br><br>        Defendant. | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this complaint against SimpliSafe, Inc. ("SimpliSafe" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are attached hereto as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, and **Exhibit E**:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 6,920,486<br>(the "'486 patent") | Method And Apparatus For Enabling Synchronizing Data In Different Devices Having Different Capabilities And Unmatched Data Fields |
| B. | 7,567,580<br>(the "'580 patent") | Edge Side Assembler |
| C. | RE 44,742<br>(the "'742 patent") | Dynamic Message Templates And Messaging Macros |
| D. | 8,401,571<br>(the "'571 patent") | Mobile Electronic System |
| E. | 8,175,037<br>(the "'037 patent") | Method For Updating A Routing Entry |

2.      Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.      Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.      SimpliSafe is a corporation organized under the laws of the State of Delaware since August 11, 2006.

5.      SimpliSafe has its principal place of business located at 100 Summer Street, Suite 300, Boston, Massachusetts 02110.

6.      SimpliSafe may be served through its registered agent for service, Christian Cerda, also located at 100 Summer Street, Suite 300, Boston, Massachusetts 02110.

## JURISDICTION AND VENUE

7.      Plaintiff repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

8.      This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.      Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

10.      Defendant is subject to this Court's specific and general personal jurisdiction under due process because of Defendant's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state and in this District.

11.     Specifically, SimpliSafe intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

12.     SimpliSafe maintains regular and established places of business in this District.

13.     SimpliSafe offers products and services and conducts business in this District as described below.

14.     SimpliSafe ships and causes to be shipped into the District infringing products and materials instructing its customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

15.     Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products in an infringing manner.

**THE ACCUSED INSTRUMENTALITIES**

16.     Plaintiff repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

17.     Based upon public information, SimpliSafe owns, operates, advertises, and/or controls the website and domain simplisafe.com, through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services. *See, e.g.*, **Exhibit F**.

18.     Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home security platform and systems, including but not limited those marketed as

SimpliSafe Systems, which include, at least, the SimpliSafe Base Station, the SimpliSafe Keypad, SimpliSafe's Mobile App (including the SimpliSafe Account), SimpliSafe paid subscription services like (*e.g.*, the SimpliCam subscription), SimpliSafe Server(s), and a variety of wireless accessories and sensors, including, but not limited to SimpliSafe's Cameras and Doorbells (*e.g.*, SimpliCam, SimpliSafe's Outdoor Cameras, and Video Doorbell Pro), SimpliSafe's Sensors (*e.g.*, Motion Sensors, Temperature Sensors, Entry Sensors, and CO Detectors), and SimpliSafe systems' encryption technologies and its cellular and Wi-Fi capabilities, and their associated hardware and software and functionalities (the "Accused Products"). *See, e.g.*, **Ex. F**, **Exhibit G**, **Exhibit I**, **Exhibit J**, and **Exhibit K**.

19.     Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products for home security and control. *See, e.g.*, **Exhibit H**; **Ex. I**.

20.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,920,486

21.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

22.     The United States Patent and Trademark Office ("USPTO") duly issued U.S. Patent No. 6,920,486 (the "'486 patent") on July 19, 2005, after full and fair examination of Application No. 10/153,170, which was filed on May 20, 2002. *See* **Ex. A**, at A-1.

23.     IoT Innovations owns all substantial rights, interest, and title in and to the '486 patent, including the sole and exclusive right to prosecute this action and enforce the '486 patent against infringers and to collect damages for all relevant times.

24.     The claims of the '486 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of synchronizing data stores on different devices having data stores that differ in respect to one or more data components.

25.     The written description of the '486 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26.     Defendant has directly infringed one or more claims of the '486 patent by using, providing, supplying, or distributing the Accused Products.

27.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '486 patent.

28.     For example, Defendant, using the Accused Products, including but not limited to SimpliSafe's Base Station, Keypad(s), Mobile App, SimpliSafe Servers, SimpliSafe Sensors, SimpliSafe's Cameras and Doorbells, and a SimpliCam Subscription and associated hardware and software, performs a method by which a first client data store hosted by a first client device is synchronized with respect to a second client data store hosted by a second client device by synchronizing the two client data stores with respect to a server data store hosted by a server device, the server having an established connection with the client devices, the two client data stores each including various data fields, the method characterized by: forming structure information indicative of the structure of the two client data stores in respect to at least one data field of the first client data store, for which the second client data store does not have either one

corresponding data field or does not have two or more data fields that in combination correspond to the at least one data field; detecting by the server or the first client device a use of the at least one data field in the first client data store; and setting a correspondence of the at least one data field in the first client data store in respect to the second client data store, in order for the at least one data field in the first client data store to be used by the second client.

29.     Since at least the time of receiving the original complaint in this action, Defendant has additionally indirectly infringed the '486 patent by inducing others to directly infringe the '486 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '486 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '486 patent, including, for example, claim 1 of the '486 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '486 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '486 patent. Defendant's inducement is ongoing. *See, e.g.*, **Exs. G–I**.

30.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed by contributing to the infringement of the '486 patent. Defendant has contributed to the direct infringement of the '486 patent by their personnel, contractors, and

customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '486 patent, including, for example, claim 1 of the '486 patent. The special features constitute a material part of the invention of one or more of the claims of the '486 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

31.     Defendant had knowledge of the '486 patent at least as of the date when it was notified of the filing of this action.

32.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

33.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

34.     Defendant's direct infringement of one or more claims of the '486 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

35.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '486 patent.

36.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

37.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '486 patent. Defendant's actions have interfered with and will interfere with IoT's ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,567,580

38.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

39.     The USPTO duly issued U.S. Patent No. 7,567,580 (hereinafter, the "'580 patent") on July 28, 2009 after full and fair examination of Application No. 11/787,977 which was filed on April 18, 2007. *See* **Ex. B**, at B-1.

40.     IoT Innovations owns all substantial rights, interest, and title in and to the '580 patent, including the sole and exclusive right to prosecute this action and enforce the '580 patent against infringers and to collect damages for all relevant times.

41.     The claims of the '580 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of methods and systems for a personal digital gateway.

42.     The written description of the '580 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

43.     Defendant has directly infringed one or more claims of the '580 patent by using, providing, supplying, or distributing the Accused Products.

44.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '580 patent.

45.     For example, Defendant, using the Accused Products, including but not limited to SimpliSafe's Base Station, Keypad(s), Mobile App, SimpliSafe Servers, SimpliSafe Sensors, SimpliSafe's Cameras and Doorbells, and a SimpliCam Subscription, and associated hardware and software, performs method, comprising: identifying data associated with a common user of a personal digital gateway and of a communications device selected from a plurality of communications devices; locating remote data stored the selected communications device; querying to retrieve the remote data; integrating the data and the remote data; formatting the integrated data according to a presentation format associated with the selected communications device; and communicating the formatted, integrated data to at least one of the plurality of communications devices.

46.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '580 patent.

47.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. RE44,742

48.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

49.     The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the "'742 patent") on February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012. *See* **Ex. C**, at C-1.

50.     IoT Innovations owns all substantial rights, interest, and title in and to the '742 patent, including the sole and exclusive right to prosecute this action and enforce the '742 patent against infringers and to collect damages for all relevant times.

51.     The claims of the '742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template based messaging systems.

52.     The written description of the '742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

53.     Defendant has directly infringed one or more claims of the '742 patent by using, providing, supplying, or distributing the Accused Products.

54.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 22 of the '742 patent.

55.     For example, Defendant, using the Accused Products, including but not limited to the SimpliSafe's Base Station and Keypad(s), Mobile App, and Servers, and associated hardware and

software, performs a method comprising determining, by a processing device, a message to be generated from a message template; automatically populating, by the processing device, a dynamic field of the message template with message context data in response to the determination; and sending, by the processing device, the message having the message context data in the dynamic field of the message template to a remote device.

56.    Since at least the time of receiving the original complaint in this action, Defendant has additionally indirectly infringed the '742 patent by inducing others to directly infringe the '742 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '742 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '742 patent. Defendant's inducement is ongoing. *See, e.g.*, **Ex. I**.

57.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed by contributing to the infringement of the '742 patent. Defendant has contributed to the direct infringement of the '742 patent by their personnel, contractors, and

customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent. The special features constitute a material part of the invention of one or more of the claims of the '742 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

58.     Defendant had knowledge of the '742 patent at least as of the date when it was notified of the filing of this action.

59.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

60.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

61.     Defendant's direct infringement of one or more claims of the '742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

62.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '742 patent.

63.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

64.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '742 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,401,571

65.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

66.     The USPTO duly issued U.S. Patent No. 8,401,571 (hereinafter, the "'571 patent") on March 19, 2013 after full and fair examination of Application No. 10/534,012 which was filed on May 5, 2005, which claims priority to a PCT application November 5, 2002. *See* **Ex. D**, at D-1. A Certificate of Correction was issued on March 11, 2014. *See id.*, at D-11.

67.     IoT Innovations owns all substantial rights, interest, and title in and to the '571 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

68.     The claims of the '571 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the operation of previous mobile electronic devices and systems, and related system hardware and software, by using a posture of an apparatus to select a mode of orientation/presentation.

69.     The written description of the '571 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

70.     Defendant has directly infringed one or more claims of the '571 patent by using, providing, supplying, or distributing the Accused Products.

71.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '571 patent.

72.     For example, as used and/or made available by the Defendant, the Accused Products, including but not limited to SimpliSafe's Base Station, Keypad(s), Mobile App, SimpliSafe Servers, SimpliSafe's Cameras and Doorbells, and a SimpliCam Subscription, and associated hardware and software, comprise an apparatus with at least one processing component configured to process data indicative of the current posture of said apparatus for enabling a posture related presentation of information to a user *via* an output component, said processing including selecting one of at least two different modes of presentation depending on said current posture of said apparatus.

73.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed one or more claims of the '571 patent by inducing others to directly infringe said claims. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '571 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent

to cause them to use the Accused Products in a manner that infringes one or more claims of the
'571 patent, including, for example, claim 1 of the '571 patent. Such steps by Defendant included,
among other things, advising or directing personnel, contractors, or end-users to use the Accused
Products in an infringing manner; advertising and promoting the use of the Accused Products in
an infringing manner; or distributing instructions that guide users to use the Accused Products in
an infringing manner. Defendant is performing these steps, which constitute induced infringement
with the knowledge of the '571 patent and with the knowledge that the induced acts constitute
infringement. Defendant is aware that the normal and customary use of the Accused Products by
others would infringe the '571 patent. Defendant's inducement is ongoing. *See, e.g.*, **Ex. I**.

74.    Defendant has also indirectly infringed by contributing to the infringement of the '571
patent. Defendant has contributed to the direct infringement of the '571 patent by their personnel,
contractors, and customers. The Accused Products have special features that are specially designed
to be used in an infringing way and that have no substantial uses other than ones that infringe one
or more claims of the '571 patent, including, for example, claim 1 of the '571 patent. The special
features constitute a material part of the invention of one or more of the claims of the '571 patent
and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's
contributory infringement is ongoing.

75.    Defendant had knowledge of the '571 patent at least as of the date when it was notified
of the filing of this action.

76.    Furthermore, on information and belief, Defendant has a policy or practice of not
reviewing the patents of others, including instructing its employees to not review the patents of
others, and thus have been willfully blind of IoT Innovations' patent rights.

77.   Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

78.   Defendant's direct infringement of one or more claims of the '571 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

79.   IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '571 patent.

80.   IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

81.   IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '571 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,175,037

82.   Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

83.     The USPTO duly issued U.S. Patent No. 8,175,037 (hereinafter, the "'037 patent") on May 8, 2012 after full and fair examination of Application No. 12/575,129 which was filed on October 7, 2009, which claims priority to a continuation of application No. 10/247,567, filed on September 20, 2002. *See* **Ex. E**, at E-1. A Certificate of Correction was issued on July 31, 2012. *See id.,* at D-9.

84.     IoT Innovations owns all substantial rights, interest, and title in and to the '037 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

85.     The claims of the '037 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of transforming data through and by updating a routing entry securely within a network.

86.     The written description of the '037 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

87.     Defendant has directly infringed one or more claims of the '037 patent by using, providing, supplying, or distributing the Accused Products.

88.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '037 patent.

89.     For example, Defendant, using the Accused Products, including but not limited to the SimpliSafe's multi-factor authentication as employed in its Base Station, Servers, and Mobile App,

performs a method, comprising receiving, at a first communication node of a network, a request for a routing entry update from a second communication node of the network, wherein an update request includes an identification of the update request; verifying authenticity of the update request by transmitting a request for verification from the first communication node to the routing node associated with the second communication node, the request for verification including a random challenge and the identification of the update request; receiving, from the routing node, a verification response including information previously transmitted to the routing node by the second communication node, wherein the information previously transmitted comprises the identification of the update request; and updating a routing entry if the authenticity of the request is verified.

90.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '037 patent.

91.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

92.     IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

93.     IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

a.   Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.   A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '486 patent, '742 patent, and '571 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '486 patent, '742 patent, and '571 patent by such entities;

c.   Judgment that Defendant accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d.   Judgment that Defendant's infringements be found willful as to the '486 patent, '742 patent, and '571 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: April 25, 2023

Respectfully submitted,

PLAINTIFF IoT INNOVATIONS, LLC.,
By its attorneys,

*/s/ David S. Godkin*

David S. Godkin (BBO #196530)
James E. Kruzer (BBO #670827)
**BIRNBAUM & GODKIN, LLP**
1 Marina Park Drive, Suite 1410
Boston, Massachusetts 02210
Telephone: (617) 307-6100
Email: godkin@birnbaumgodkin.com
Email: kruzer@birnbaumgodkin.com

OF COUNSEL:

James F. McDonough, III (GA 117088)**
Jonathan R. Miller (GA 507179)**
Travis E. Lynch (GA 162373)**
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9505, -9517, -9514
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

C. Matthew Rozier (CO 46854)**
**ROZIER HARDT MCDONOUGH PLLC**
2590 Walnut Street, Suite 10
Denver, Colorado 80205
Telephone: (720) 820-3006
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)**
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

**Admission *pro hac vice* anticipated

**<u>List Of Exhibits</u>**

A.  U.S. Patent No. 6,920,486
B.  U.S. Patent No. 7,567,580
C.  U.S. Patent No. RE44,742
D.  U.S. Patent No. 8,401,571
E.  U.S. Patent No. 8,175,037
F.  SimpliSafe Home Security Systems - Wireless Home Security Alarms
G.  Shop DIY Home Security Systems & Packages - SimpliSafe
H.  SimpliSafe Help Center
I.  SimpliSafe Home Security Systems - SimpliSafe Indoor Security Camera
J.  Inside SimpliSafe Alarm System - Tenable TechBlog
K.  Does any of my data go via a SimpliSafe server - SimpliSafe Help Center